MARSH, Appellee,

v.

MARSH, Appellant.

[Cite as *Marsh v. Marsh* (1995), 105 Ohio App.3d 747.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–95–11.

Decided Aug. 18, 1995.

*Rizor, Minnard, Rizor & Golden Co., L.P.A.,* and *Shelby D. Golden,* for appellee.

*King & Blair* and *James C. Blair,* for appellant.

HADLEY, Judge.

Defendant-appellant, Steven Marsh, appeals from the judgment entry of the Allen County Court of Common Pleas, Domestic Relations Division, which imputed earned income to appellant and plaintiff-appellee, Barbara Marsh, for the purposes of calculating child support.[1]

Appellant and appellee were married in July 1983. The parties have three children. During their marriage, the parties resided in Saudi Arabia where appellant was employed as an engineer. In October 1993, appellee moved to Allen County with the parties' children. Appellant traveled to Allen County in November 1993. On December 3, 1993, appellee filed a complaint for divorce.

---

1. Appellee filed a notice of cross-appeal; however, it was dismissed for want of prosecution on July 31, 1995.

Appellant then returned to Saudi Arabia in February 1994 and remained there until he resigned from his job in May 1994. Upon his resignation, appellant moved to Allen County.

A hearing was held in August 1994. At the hearing, the parties entered their agreement regarding division of property, assumption of debt, and spousal support. Testimony was also given regarding income and employment status.

In its judgment entry of October 19, 1994, the trial court found that appellant was underemployed and appellee was unemployed and imputed annual incomes of $95,000 and $8,840, respectively. The trial court also determined that appellant and appellee each received over $400,000 in income-producing assets and/or cash due to their agreed property settlement. Moreover, the court found that in 1992, the parties received $62,000 in dividends and interest and, in 1993, the parties received $35,000 in dividends and interest. From these amounts,[2] the court imputed additional income of $24,250 to each party.

In its judgment entry and shared parenting decree of January 24, 1995, the trial court granted the divorce, found the parties' agreement to be fair and equitable, and approved a shared parenting plan. In addition, the court again declared the same imputed income for calculating child support.[3]

It is from this judgment entry that appellant presents the following assignment of error:

"The trial court erred in imputing earned income to either party as a basis for computing child support."

Appellant maintains that the trial court abused its discretion by imputing earned income. He appears to contend that the parties' income producing assets provide adequate support for the children and that it is impossible for appellant to acquire employment generating a $95,000 annual income. Furthermore, although appellant's contentions center around his imputed earned income, appellant appears to also dispute appellee's imputed earned income.

Before addressing appellant's assignment of error, we note, in violation of App.R. 16(A)(7), that appellant's brief includes no citations to statutes or case law to support his assertions. In the interest of justice, however, we will address the issues set forth.

---

2. The amounts are rounded numbers.

3. The amount of earned income imputed to appellee in this judgment entry is $8,800.

R.C. 3113.215 governs the calculation of child support and includes definitions to assist in determining parents' income. Specifically, R.C. 3113.215(A)(1)(b) defines income "[f]or a parent who is unemployed or underemployed, [as] the sum of the gross income of the parent, and any potential income of the parent."

"Potential income," pursuant to R.C. 3113.215(A)(5), is defined as:

"(a) [i]mputed income that the court * * * determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides;

"(b) [i]mputed income from any nonincome-producing assets * * *."

The Ohio Supreme Court, applying R.C. 3113.215, has held that the questions of "whether a parent is voluntarily (*i.e.,* intentionally) unemployed or voluntarily underemployed" and "the amount of potential income to be imputed" are determinations within the trial court's discretion and will be upheld absent an abuse of discretion. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218, 222. An abuse of discretion constitutes an " 'unreasonable, arbitrary or unconscionable' " attitude. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. Furthermore, "[t]he parent's subjective motivations for being *voluntarily* unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." *Rock v. Cabral,* 67 Ohio St.3d at 111, 616 N.E.2d at 222. Thus, the main objective of R.C. 3113.215 is to protect the best interests of the children. *Id.*

█ In view of the above-stated law, we first address the imputation of income to appellee. The record shows that appellee attended school upon her move to Allen County and has plans to continue her education. Testimony also indicates that appellee was essentially a homemaker in Saudi Arabia. The trial court determined that appellee was unemployed and that a minimum wage position amounting to an income of $8,800 per year would be imputed to appellee since she lacked requisite skills and work history comparable to appellant. These findings by the trial court fail to constitute an abuse of discretion.

█ With regard to appellant, the trial court found that appellant quit his job as an engineer in Saudi Arabia in May 1994 and, to date, has made no effort to obtain employment. Specifically, the trial court stated that "the [d]efendant indicates that he does not intend to seek employment as he had accumulated some measure of finances which would allow, even after the distribution and

division of assets in the marriage, for him to participate fully in the raising of his children and to satisfy any needs on behalf of the children."

The trial court found, therefore, that appellant was underemployed. Upon review, we again find no abuse of discretion in the trial court's determination.

Finally, we address the amount of earned income that the trial court imputed to appellant. The trial court found that appellant earned $120,000 in 1993, $25,000 of that amount representing shipping and airline ticket reimbursements. The court also determined that appellant earned $107,000 in 1992; however, $12,000 of that amount was expended for airline tickets. As a result, the trial court, stating that there was no other testimony with regard to appellant's underemployment, imputed income of $95,000.

The record includes testimony of appellant's educational background, employment in Saudi Arabia, and the above-mentioned earnings. However, contrary to R.C. 3113.215(A)(5)(a), there is no evidence nor consideration regarding job opportunities or salary levels within appellant's field in Allen County.

In light of the foregoing, the trial court abused its discretion by imputing the amount of $95,000 as potential earned income to appellant. Appellant's assignment of error, therefore, is well taken in that regard and the judgment entry of the Allen County Court of Common Pleas, Domestic Relations Division is affirmed in part and reversed in part and the cause remanded for reconsideration of appellant's imputed income in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

THOMAS F. BRYANT, P.J., and SHAW, J., concur.